# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 02 C 4761 | DATE | 2/13/2003 |
| CASE TITLE | NAUGHTON vs. SEARS, ROEBUCK & CO., et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Defendants' motion for summary judgment [9-1] is granted as to Count I through III and denied as to Count IV. Count IV is dismissed without prejudice. ENTER MEMORANDUM OPINION AND ORDER.

*Suzanne B. Conlon*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | FEB 18 2003 date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | 22 |
| | Copy to judge/magistrate judge. | | 2/13/2003 | |
| CB | courtroom deputy's initials | 03 FEB 14 AM 8:29 | date mailed notice PW | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

WENDY NAUGHTON, )
)
            Plaintiff, ) No. 02 C 4761
)
v. ) Suzanne B. Conlon, Judge
)
SEARS, ROEBUCK & CO. and )
JOHN LEBBAD, )
)
           Defendants.

## MEMORANDUM OPINION AND ORDER

Wendy Naughton ("Naughton") sues Sears, Roebuck & Co. ("Sears") and John Lebbad ("Lebbad"), alleging sexual harassment (Count I), sex discrimination (Count II) and retaliation (Count III) in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, against Sears and common law intentional infliction of emotional distress (Count IV) against Sears and Lebbad (collectively, "defendants"). Defendants move for summary judgment on all counts.

## BACKGROUND

**DOCKETED**
**FEB 1 8 2003**

### I. Local Rule 56.1

Local Rule 56.1 requires litigants to follow a detailed procedure in filing and responding to summary judgment motions. Local Rule 56.1 requires both the moving and non-moving parties to submit a statement of material facts, including, "specific references to the affidavits, parts of the record, and other supporting materials relied upon." Local Rule 56.1(a)(3); Local Rule 56.1(b)(3)(B). Evidence submitted at summary judgment must be admissible at trial under the

1

Federal Rules of Evidence. *Woods v. City of Chicago*, 234 F.3d 979, 988 (7th Cir. 2000). All facts not properly supported by the record evidence must be disregarded. *Brasic v. Heinemann's Inc.*, 121 F.3d 281, 284 (7th Cir. 1997).

In response to a motion for summary judgment, Local Rule 56.1 requires the non-moving party to submit a response "to each numbered paragraph in the moving party's statement [of material facts], including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." Local Rule 56.1(b)(3)(A). All relevant facts denied without supporting documentation must be accepted as true provided the facts are "properly supported by references to the record or other evidentiary material." *Jupiter Aluminum Corp. v. Home Ins. Co.*, 225 F.3d 868, 871 (7th Cir. 2000); *Stewart v. McGinnis*, 5 F.3d 1031, 1034 (7th Cir. 1993). Both parties failed to fulfill their obligations under Local Rule 56.1.

## A. Defendants' Submissions

In its statement of facts, defendants detail Sears' treatment of Lebbad after Naughton's complaint. Def. Facts at ¶¶ 58-67. Although defendants claim "Sears handling of [Naughton's] complaint and its subsequent treatment of her certainly is material," they fail to explain why Sears' subsequent treatment of Lebbad is relevant. Reply to Def. Facts at 4. In their opening brief, defendants only mention these facts in passing to point out that Lebbad's conduct may have been inappropriate. Motion at 6. The court will not consider these irrelevant facts in deciding defendants' summary judgment motion. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)(facts that are irrelevant or unnecessary to summary judgment motion will not be considered).

## B.  Naughton's Submissions

Naughton's submissions fail to comply with Local Rule 56.1. As an initial matter, Naughton's statement of additional facts and response to defendants' statement of facts are peppered with legal and factual arguments. *See* Pl. Facts at ¶¶ 93-94, 97, 114, 118, 122, 125, 128, 131-134, 143-144, 148, 151-156, 158, 171, 182, 187-193, 196-197, 204 and 211; Pl. Resp. to Def. Facts at ¶¶ 14-15, 17, 20, 23, 25, 27, 32-35, 50 and 54-55. "The purpose of the 56.1 statement is to identify for the Court the evidence supporting a party's factual assertion in an organized manner; it is not intended as a forum for factual or legal argument." *Malec v. Sanford*, 191 F.R.D. 581, 585 (N.D. Ill. 2000).

Moreover, Naughton fails to support numerous factual statements with admissible evidence. *See Wiskunas v. Birnbaum*, 23 F.3d 1264, 1267-68 (7th Cir. 1994)(only admissible evidence may be considered on summary judgment). For example, Naughton improperly cites to her complaint as evidentiary support for ¶¶ 93, 99, 112, 119, 151-155, 188 and 211 of her statement of facts. *See Burton v. Nelson*, 1998 WL 46900 at *1, n. 1 (N.D. Ill. Feb. 3, 1998)(complaint is not evidence). Naughton also relies on her own testimony, in whole or in part, to support ¶¶ 102, 106, 109, 114, 134, 138, 177 and 204 of her statement of facts and ¶¶ 25, 40, 47 and 56-57 of her response to defendants' statement of facts without establishing personal knowledge of the subject matter. *See Joseph P. Caulfield & Associates, Inc. v. Litho Productions, Inc.*, 155 F.3d 883, 888 (7th Cir. 1998)(witness lacking personal knowledge cannot raise issue of fact through deposition testimony). Naughton further relies, in whole or in part, on testimony based on inadmissible hearsay. Pl. Facts at ¶¶ 96 and 161; Pl. Resp. to Def. Facts at ¶ 18. Inadmissible hearsay cannot be considered on summary judgment. *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 741 (7th Cir. 1997). In addition,

Naughton's responses to ¶¶ 70-72, 75-77, 80 and 84 of defendants' statement of facts fail, in whole or in part, to cite to record evidence supporting the denials. Indeed, Naughton's responses to ¶¶ 70-72, 75-77 and 84 are identical despite the fact that these paragraphs address at least three different topics.

Finally, Naughton relies on evidence in her brief that is not included in either parties' statement of facts. *See, e.g.*, Response at 6, *citing* Campbell Dep. at 30-32 ("Lebbad would use profanity and refer to women as bitches"). *See also* Response at 7, *citing* Pl. Dep. at 173, 337-8 (recounting what other people told her about Lebbad's treatment of women). Consideration of this evidence would effectively nullify Local Rule 56.1. Therefore, evidence submitted to the court, but not included in the parties' statement of material facts, will not be considered. *See Bordelon v. Chicago School Reform Board of Trustees*, 223 F.3d 524, 529 (7th Cir. 2000)("the district court is entitled to limit its analysis of the facts on summary judgment to evidence that is properly identified and supported in the parties' [Local Rule 56.1] statements").

In sum, Naughton's factual statements will be considered to the extent they are properly submitted and supported by admissible evidence. Defendants' factual statements, if properly supported, are deemed admitted to the extent that Naughton's denials fail to comply with Local Rule 56.1.

## II. Facts

The following facts are undisputed unless otherwise noted. Sears is a leading national retailer of apparel, home and automotive products and services. In 1996, Sears hired Naughton as product promotions manager. Thereafter, Sears identified Naughton as a "high potential associate." On July

4

1, 2000, Sears promoted Naughton to sales promotions manager in the event marketing/sales promotion department.

At the time of Naughton's promotion, the event marketing/sales promotion department consisted of four areas: (1) Naughton's sales promotions group; (2) event marketing; (3) hometown marketing; and (4) new store remodel, new store opening, store closing and catastrophe marketing. The other areas were each headed by a manager: Nancy Campbell was the event marketing manager, Don Orlando was the hometown marketing manager and John Lynskey was the new store remodel marketing manager. Naughton and the other managers reported directly to Lebbad, who was the top manager in the department.

Shortly after Naughton joined the event marketing/sales promotion department, Lebbad promoted Campbell to senior event marketing manager for non-motor sports. Kevin Riley was hired as the event marketing manager, but reported directly to Campbell. Thereafter, Touré Claiborne (male) was hired as event marketing manager for motor sports. Claiborne reported directly to Lebbad.

According to Naughton, Lebbad made life difficult for her. For example, Lebbad required each manager in the event marketing/sales promotion department to have a weekly or bi-weekly "touch base" meeting with him. Lebbad often needed to cancel these meetings with his managers. Naughton found it difficult to reschedule her meetings with Lebbad.

Lebbad frequently used the word "idiot" to refer to Naughton and her performance. Lebbad repeatedly threatened to prepare a development plan to improve her performance. Lebbad often interrupted Naughton on the telephone and in meetings. Naughton claims Lebbad would make her stop whatever she was doing to come to his office for a meeting. Once during a meeting, Lebbad

became upset, abruptly stopped the meeting and said, "I have a problem. You and you [Naughton and a female representative from an outside agency] stay here" while telling the male attendees to leave. Naughton claims she was embarrassed by Lebbad's actions.

During a meeting on February 15, 2001, Naughton asked Lebbad if he wanted her to quit. Lebbad responded, "No, I don't want you to quit, I want to fire you." Naughton left the room and when she returned, Lebbad told her, "I didn't mean it. I want to make this work." He then told Naughton to take the rest of the day off. The following business day, Lebbad apologized to Naughton, telling her he was way out of line and should not have spoken to her that way. According to Naughton, Lebbad did the same thing a week later.

In February 2001, Lebbad completed Naughton's performance evaluation. Sears employees are evaluated in two overall categories: business results and leadership skills. Employees are rated from 1 to 5 in each overall category with 1 being "expectations not met" to 5 being "far exceeds expectations." In preparing Naughton's evaluation, Lebbad took into consideration feedback he received from Naughton's supervisors prior to her promotion. Lebbad initially rated Naughton a "3" or "consistently meets expectations" in business results and a "2" or "some expectations met" in leadership skills. On March 5, 2001, Lebbad met with Naughton to discuss her performance evaluation. Naughton disagreed with the overall "2" rating in leadership skills. Lebbad changed the "2" to a "3."

Sometime during the week prior to her performance review meeting with Lebbad, Naughton met with human resources director Yvonne Sweeney to complain about Lebbad. According to Sweeney, she received complaints about Lebbad from several employees, both male and female. During their meeting, Naughton told Sweeney that Lebbad treats men differently than women. In

6

response to Naughton's complaint, Sweeney interviewed several employees in the event marketing/sales promotion department. Approximately two weeks later, Sweeney informed Lebbad of the nature of the complaint against him. During their meeting, Lebbad asked Sweeney who complained about him. When Sweeney told him that she could not reveal that information, Lebbad replied, "It must have been [Naughton]." Sweeney remained silent and had to leave the room because Lebbad's reaction was so emotional.

Thereafter, Sweeney met with Naughton. According to Naughton, Sweeney told her that nearly everyone in the department confirmed that Lebbad treated women differently than men. Sweeney also told Naughton that Lebbad was a problem. Sweeney informed Naughton that she was going to set up a development plan for Lebbad.

In April 2001, Lebbad began writing a development plan for Naughton. Thereafter, Sweeney recommended that Lebbad hold off on writing the development plan because Naughton had told her that she wanted to pursue another opportunity within Sears. Pursuant to Sears policy, employees on development plans cannot move into other positions. Based on Sweeney's recommendation, Lebbad did not present Naughton with the development plan.

On June 1, 2001, Naughton told Lebbad that she decided to stay in the event marketing/sales promotion department. At that time, Lebbad told Naughton that he was going to place her on a development plan. Naughton asked Lebbad to tell her what issues he had with her performance. According to Naughton, Lebbad threw his pen across the table and yelled, "My issues with you are you don't delegate and you don't take ownership." Naughton told Lebbad that she considered his criticisms contradictory and asked, "is there any hope in making this work?" Lebbad responded, "I would hate to see you leave because of me."

7

The next business day, Naughton resigned. When Naughton left, Lebbad announced that Naughton "retired because she married rich." After Naughton resigned, a copy of the development plan drafted by Lebbad was placed in her personnel file.

## DISCUSSION

### I. Standard of Review

Summary judgment is appropriate when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once a moving party has met its burden, the non-moving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Silk v. City of Chicago*, 194 F.3d 788, 798 (7th Cir. 1999). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248; *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). The summary judgment standard is applied with special scrutiny to employment discrimination cases because the outcome may depend on determinations of credibility and intent. *Michas v. Health Cost Controls of Illinois*, 209 F.3d 687, 692 (7th Cir. 2000).

### II. Summary Judgment Motion

#### A. Title VII Claims

Title VII prohibits an employer from discharging or otherwise discriminating against an employee in the terms, conditions or privileges of employment based on the employee's sex. 42 U.S.C. § 2000e-2(a). Title VII's prohibition against sex discrimination protects employees against sexual harassment. 42 U.S.C. § 2000e-2(a)(1); *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57,

8

64 (1986). In order to prove a case of discrimination or retaliation under Title VII, Naughton must offer either direct or indirect evidence. *Oest v. Illinois Dep't of Corrections*, 240 F.3d 605, 615 (7th Cir. 2001)(discrimination); *Stone v. City of Indianapolis Public Utilities Division*, 281 F.3d 640, 643-44 (7th Cir. 2002)(retaliation). Under either approach, Naughton must show she suffered a materially adverse employment action. *Haugerud v. Amery School District*, 259 F.3d 678, 691 (7th Cir. 2001)(discrimination); *Stone*, 281 F.3d at 643-44 (retaliation).

1.   **Adverse Employment Action**

Naughton claims she suffered an adverse employment action when she was forced to resign because of Lebbad's discriminatory harassment.[1] Constructive discharge, like actual discharge, is a materially adverse employment action. *EEOC v. University of Chicago Hospitals*, 276 F.3d 326, 331 (7th Cir. 2002). To establish constructive discharge, Naughton must prove that her working conditions were so intolerable as a result of unlawful discrimination that a reasonable person would be forced to resign. *Tutman v. WBBM-TV, Inc.*, 209 F.3d 1044, 1050 (7th Cir. 2000). "Working conditions for constructive discharge must be even more egregious than the high standard for hostile work environment because 'in the 'ordinary' case, an employee is expected to remain employed while seeking redress.'" *Id., quoting Drake v. Minnesota Mining & Mfg. Co.*, 134 F.3d 878, 886 (7th Cir. 1998). Applying this standard, Naughton's cannot prove her constructive discharge claim if she cannot prove her sexual harassment claim.

---

[1]   To the extent that Naughton claims Lebbad's criticism, including the negative performance review or development plan, constitutes an adverse job action, her claim must be rejected. *See Oest,* 240 at 612-13 (job related criticism, including negative performance reviews and oral or written reprimands, does not constitute an adverse employment action absent some tangible job consequence).

9

## 2. Sexual Harassment

To survive summary judgment, Naughton must present evidence showing Lebbad's conduct: (1) was based on sex; (2) was so severe and pervasive as to alter the terms or conditions of the employment relationship; and (3) provides a basis for Sears' liability. *Smith v. Sheahan*, 189 F.3d 529, 532-33 (7th Cir. 1999). Sears claims summary judgment is appropriate because Naughton cannot prove the first or second element required to establish a hostile work environment based on her sex.

### a. Harassment Based on Sex

Sears contends that Naughton cannot establish Lebbad's conduct was based on her sex. "Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at 'discrimination because of sex.'" *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 80 (1998). "The critical issue, as Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Id.* Non-sexual conduct may be actionable where the "incidents are unmatched by similar reports of verbally and physically aggressive behavior toward male co-workers. This evidence would permit a trier of fact to draw the inference that [the harasser] chooses to harass women but not men." *Smith*, 189 F.3d at 533.

Naughton has not presented sufficient evidence demonstrating that Lebbad subjected her to conduct not directed at male employees. Naughton claims Lebbad called her an idiot, interrupted her while she was on the telephone or in meetings, made it difficult for her to reschedule meetings, yelled at her and critiqued her performance in front of others. Although Naughton claims Lebbad did not treat males the same way, Naughton fails to provide any evidence supporting her general

10

conclusion. *See* Pl. Facts at ¶¶ 118, 122, 128, 134 and 144; Pl. Resp. to Def. Facts at ¶¶ 14-15, 17, 20, 23, 25, 32, 35. At most, Naughton's admissible evidence establishes that Lebbad may have treated male employees Orlando and Lynskey better than other employees in the department. *See* ¶¶ 14 and 118, *citing* Lynskey Dep. at 29 and Orlando Dep. at 63; ¶ 15, *citing* Lynskey Dep. at 29 and Orlando Dep. at 57-58; ¶¶ 17 and 128, *citing* Pl. Dep. at 213, Campbell Dep. at 107 and Demourelle Dep. at 41; ¶ 20, *citing* Pl. Dep. at 144, 202-03, 297, 313, 327-28, Campbell Dep. at 107 and Demourelle Dep. at 41; ¶ 23, *citing* Lynskey Dep. at 28; ¶ 25, *citing* Pl. Dep. at 162-163; ¶¶ 32-33, *citing* Orlando Dep. at 55-56 and Pl. Dep. at 177-178; ¶ 35, *citing* Orlando Dep. 58; Lynskey Dep. 27-28; ¶ 134, *citing* Pl. Dep. at 162-163, Brommer Dep. at 21-22, Demourelle Dep. at 58, Reynolds Dep. at 16 and Campbell Dep. at 96-7; and ¶ 144, *citing* Orlando Dep. at 55-56.

In contrast, defendants presented evidence that Lebbad interrupted male employees while they were on the telephone, made it difficult for them to reschedule meetings, yelled at them and criticized their performance in front of other people. Campbell Dep. at 52-54 and 106-09. Even Orlando testified that Lebbad yelled at him, criticized his performance in front of others and made it difficult to reschedule meetings. Orlando Dep. at 46 and 77-87. *See also* Lynskey Dep. at 28 (difficult for him to reschedule meetings); Reynolds Dep. at 13 (Lebbad had a "very poor relationship" with Mike d'Oliveira that included criticizing him in front of others). Indeed, Sweeney received complaints about Lebbad's behavior from both male and female employees. Based on this record, a reasonable jury could not conclude Lebbad's treatment of Naughton was motivated by her gender. *See Oest*, 240 F.3d at 615 (uncorroborated generalities are insufficient to support a discrimination claim). *See also Cowan v. Prudential Ins. Co. of America*, 141 F.3d 751, 759 (7th

11

Cir. 1998)("Disparate treatment must be based on sex or some other illegal criteria; mere favoritism of one employee over another is not enough").

b.      **Severe or Pervasive**

Even if Lebbad treated women worse than men, Naughton cannot establish that the harassment was "sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." *Meritor*, 477 U.S. at 67. Whether harassment is sufficiently severe or pervasive depends on the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993). The work environment cannot be described as hostile for purposes of Title VII unless a reasonable person would find it offensive and Naughton actually perceived it as hostile. *Hostetler v. Quality Dining, Inc.*, 218 F.3d 798, 807 (7th Cir. 2000). These standards "are sufficiently demanding to ensure that Title VII does not become a 'general civility code.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998), *citing Oncale*, 523 U.S. at 80. A workplace must be "hellish" before it is actionable as a hostile environment. *Logan v. Kautex Textron North America*, 259 F.3d 635, 641 (7th Cir. 2001).

Neutral verbal abuse is not actionable under Title VII. *See Hardin v. S.C. Johnson & Son, Inc.*, 167 F.3d 340, 345-46 (7th Cir. 1999)("persistent cursing and use of abusive language" is not harassment where there is nothing "inherently ... discriminatory" about the comments). *See also Holtz v. Marcus Theatres Corp.*, 31 F.Supp.1139 (N.D. Ill. 1999)("Merely yelling at female employees and calling them names does not rise to the level of an actionable hostile work environment"). Lebbad's behavior may have been offensive, but "merely offensive" behavior does

not render a workplace objectively hostile or abusive. *Harris*, 510 U.S. at 21. Indeed, a supervisor's frequent comments to a subordinate such as "what the hell is going on?," "what the hell are you doing?," "get your head out of your ass," "dumb motherfucker" and "when the fuck are you going to get the product?" did not create an actionable hostile work environment. *Hardin*, 167 F.3d at 345-46. Based on the totality of the circumstances, a reasonable jury could not conclude Lebbad's conduct was so severe or pervasive as to constitute an actionable hostile work environment. Naughton's failure to prove her sexual harassment claim dooms her Title VII claims because she cannot prove she was constructively discharged.

## B. Intentional Infliction of Emotional Distress Claim

Naughton's remaining claim must be dismissed. The court may relinquish jurisdiction over state law claims when all federal claims have been dismissed. 28 U.S.C. § 1367(c)(3). According to the general rule, "when all federal claims are dismissed before trial, the pendent claims should be left to the state courts." *Wright v. Associated Ins. Cos., Inc.*, 29 F.3d 1244, 1252 (7th Cir. 1994). Nevertheless, defendants argue that resolution of Naughton's sexual harassment claim is dispositive of her intentional infliction of emotional distress claim. *See Id.* at 1251 (exception arises when "it is absolutely clear how the pendent claims can be decided"). Specifically, defendants claim Naughton's claim is preempted by the Illinois Human Rights Act.

The Illinois Human Rights Act preempts tort claims that are "inextricably linked" to allegations of sexual harassment. *Maksimovic v. Tsogalis*, 177 Ill.2d 511, 516, 687 N.E.2d 21, 22-23 (1997). Contrary to defendants' position, Naughton's intentional infliction of emotional distress claim is not "inextricably linked" to her sexual harassment claim because Naughton need not rely on any legal duty created by the Illinois Human Rights Act to state a claim. *Krocka v. City of*

13

*Chicago*, 203 F.3d 507, 517 (7th Cir. 2000), *citing Maksimovic*, 177 Ill.2d at 516, 687 N.E.2d at 23. Defendants' argument directly contradicts their claim, and the court's ruling, that Lebbad's conduct toward Naughton was not based on her gender. Under these circumstances, the court declines to exercise supplemental jurisdiction over Naughton's remaining state law claim.

## CONCLUSION

Defendants are entitled to judgment as a matter of law on Naughton's Title VII claims. Naughton's intentional infliction of emotion distress claim is dismissed without prejudice.

February 13, 2003                    ENTER:

*Suzanne B. Conlon*
Suzanne B. Conlon
United States District Judge